# EXHIBIT A

# STATE COURT COMPLAINT WITH JURY DEMAND

EXHIBIT A

Electronically Filed
7/16/2026 9:25 AM
TIMOTHY F. ANDREWS
CLERK OF THE COURT

**COMJD**
Christian Gabroy
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
GABROY | MESSER
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson, Nevada 89012
Tel: (702) 259-7777
Fax: (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com
*Attorneys for Plaintiff Nayirah Dunlap*

CASE NO: A-26-951488-C
Department 27

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| NAYIRAH DUNLAP, an individual;<br><br>Plaintiff,<br>vs.<br><br>FIRSTKEY HOMES, LLC; FIRSTKEY HOMES OF NEVADA, LLC; DOES I through X; and ROE Corporations XI through XX, inclusive;<br><br>Defendants. | Case No.<br>Dept.:<br><br>**COMPLAINT WITH JURY DEMAND** |

**COMPLAINT WITH JURY DEMAND**

COMES NOW Nayirah Dunlap ("Plaintiff" or "Dunlap"), by and through her counsel, Christian Gabroy, Esq. and Kaine Messer, Esq. of Gabroy | Messer, and hereby alleges and complains of Defendants FirstKey Homes, LLC and FirstKey Homes of Nevada, LLC (together "FirstKey" or Defendants") as follows:

**VENUE AND JURISDICTION**

1. This is a civil action for damages under state and federal laws prohibiting unlawful employment actions and to secure the protection of and to redress deprivation of rights under these laws.

2. Jurisdiction and venue are based on 42 U.S.C. § 12117(a), 42 U.S.C. §2000e, *et seq.*, NRS Chapter 613, *et seq.*, and Plaintiff's claims under Nevada common law.

3. All alleged unlawful employment actions occurred in this judicial district.

4. Plaintiff hereby demands a jury trial on all issues triable by jury herein.

**PARTIES**

5. At all times relevant, Plaintiff was a resident of this Judicial District of Clark County, Nevada.

6. At all times relevant, Defendant FirstKey Homes, LLC was Plaintiff's employer as that term is defined in 29 U.S.C. §2611.

7. At all times relevant, Defendant FirstKey Homes, LLC was Plaintiff's employer as that term is defined in NRS 613, *et seq*.

8. At all times relevant, Defendant FirstKey Homes, LLC was Plaintiff's employer as that term is defined in 42 U.S.C. § 2000e, *et seq*.

9. At all times relevant, Defendant FirstKey Homes, LLC was Plaintiff's employer as that term is defined in 29 U.S.C. § 630.

10. Plaintiff is informed, believes, and thereon alleges that at all times relevant, Defendant FirstKey Homes, LLC was a foreign limited-liability company listed with the Nevada Secretary of State.

11. Plaintiff is informed, believes, and thereupon alleges that at all times relevant, Defendant FirstKey Homes, LLC was doing business in this Judicial District in Clark County, Nevada where the unlawful employment practices and wrongful actions complained herein occurred.

12. Defendant FirstKey Homes, LLC represented to the federal government on Plaintiff's 2021 Form W-2 that it was Plaintiff's employer.

13. At all times relevant, Defendant FirstKey Homes of Nevada, LLC was Plaintiff's employer as that term is defined in 29 U.S.C. §2611.

14. At all times relevant, Defendant FirstKey Homes of Nevada, LLC was Plaintiff's employer as that term is defined in NRS 613, *et seq*.

15. At all times relevant, Defendant FirstKey Homes of Nevada, LLC was Plaintiff's employer as that term is defined in 42 U.S.C. § 2000e, *et seq*.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

16. At all times relevant, Defendant FirstKey Homes of Nevada, LLC was Plaintiff's employer as that term is defined in 29 U.S.C. § 630.

17. Plaintiff is informed, believes, and thereon alleges that at all times relevant, Defendant FirstKey Homes of Nevada, LLC was a foreign limited-liability company listed with the Nevada Secretary of State.

18. Plaintiff is informed, believes, and thereupon alleges that at all times relevant, Defendant FirstKey Homes of Nevada, LLC was doing business in this Judicial District in Clark County, Nevada where the unlawful employment practices and wrongful actions complained herein occurred.

19. The true names and capacities, whether individual, corporate, associate or otherwise of other Defendants hereinafter designated as Does I-X and Roe Corporations XI-XX, inclusive, who are in some manner responsible for the injuries described herein, and who were, upon information and belief, Plaintiff's "employer" is unknown to Plaintiff at this time who therefore sues said Defendants by such fictitious names and will seek leave of the Court to amend this Complaint to show their true names and capacities when ascertained.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

**PROCEDURAL REQUIREMENTS**

20. Plaintiff has satisfied all administrative and jurisdictional requirements necessary to maintain this lawsuit.

21. Plaintiff timely completed and filed her Charge of Discrimination with the Nevada Equal Rights Commission ("NERC") on October 25, 2022. *See* a true and correct copy of Plaintiff's Charge of Discrimination attached hereto as Exhibit I. Such allegations of Exhibit I are hereby incorporated herein this Complaint.

22. At all relevant times, NERC maintained a work-sharing agreement with Equal Employment Opportunity Commission ("EEOC").

23. "A work-sharing agreement between the EEOC and the NERC…allows for an exhaustion of remedies with either agenc[y] and constitutes an exhaustion with both entities." *Chavez v. Stratosphere Gaming LLC*, No. 2:20-cv-01048-GMN-NJK,

2021 WL 2668833, at *3 (D. Nev. Mar. 4, 2021).

24. By filing her Charge with NERC, Plaintiff dual-filed her Charge with the EEOC.

25. On or about February 3, 2026, NERC issued a Determination in favor of Plaintiff. *See* a true and correct copy of NERC's February 3, 2026 Letter of Determination attached hereto as Exhibit II. Such allegations of Exhibit II are hereby incorporated herein this Complaint.

26. Specifically, NERC found that:

> [t]here is sufficient evidence for Dunlap to be determined a qualified person under the ADAAA and/or NV State law. Notably, she was on medical leave for after childbirth complications for multiple months…Evidence further supports that Respondent was aware, or should have been aware, that Dunlap was a disabled person who needed disability accommodation in the form of additional leave.

*See* Exhibit II.

27. On or about March 31, 2026, NERC dispatched a letter indicating that "in accordance with our Work Sharing Agreement with the Equal Employment Opportunity Commission (EEOC), we are forwarding this case to the EEOC for further processing. Thus, the Nevada Equal Rights Commission is closing its files on the Charge."

28. On or about April 21, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. *See* a true and correct copy of Plaintiff's right to sue attached hereto as Exhibit III.

## FACTUAL ALLEGATIONS

29. Defendants represent to their employees that "[o]ur values help us to form the strategies we employ to fulfill our mission. Our foundation derives from these same values and sets the standard for how we conduct ourselves and how we perform our work."

30. Plaintiff was hired by Defendants in or about April 2021 as a property administrator.

31. At all times relevant, Plaintiff was an exceptional employee.

32. Plaintiff found out she was pregnant in May 2021.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

33. Plaintiff notified Defendants of her pregnancy shortly after finding out she was pregnant.

34. In October 2021, Plaintiff applied for leave under the Family and Medical Leave Act ("FMLA").

35. However, Defendants informed Plaintiff that she did not quality for FMLA leave.

36. Plaintiff also applied for short-term disability via her request.

37. Plaintiff was informed her short-term disability was being approved for January 4, 2022 but back dated to December 20, 2021.

38. Plaintiff informed Defendants that she wanted to continue to work during her pregnancy as employees were working remotely at the time and so she could bank her hours.

39. Defendants had a parental leave program that was going to go into effect in January 2022 and Plaintiff wanted to save her hours for that.

40. Defendants approved such request.

41. Plaintiff delivered her baby on December 19, 2021.

42. Plaintiff continued to work during this time.

43. On December 27, 2021, Plaintiff's manager sent her a text message telling her that she should not be clocking in for work.

44. Plaintiff immediately called the manager and discussed the fact that she had been working.

45. Defendants told Plaintiff she was to no longer clock in.

46. Defendants also restricted her IT access.

47. In late January 2022 to early February 2022, Plaintiff began experiencing medical complications from her delivery and then required time off.

48. Plaintiff continually sent in medical documents to the third-party administrator of the short-term disability.

49. Such documentation indicated that Plaintiff required approximately six to

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

twelve weeks off of work at that time.

50. Plaintiff later required another six to eight weeks off.

51. In March 2022, Defendants represented to Plaintiff that the temporary employee who had been working Plaintiff's position had been promoted and that another temporary employee was working Plaintiff's position.

52. On May 5, 2022, Defendants called Plaintiff and indicated her return to work was to be April 23, 2022.

53. However, on the call Plaintiff explained to Defendants that her leave had to be extended.

54. Defendants then called Plaintiff back and informed her that her leave had expired under the FMLA.

55. Plaintiff reminded Defendants that she was not on FMLA leave but rather short-term disability.

56. Defendants then ended the call.

57. A short time later, Defendants called Plaintiff and informed her she was being terminated.

58. Defendants later claimed Plaintiff had resigned.

59. At no time did Plaintiff resign from her position.

60. As a result of the conduct described herein, Plaintiff has been damaged.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

**FIRST CAUSE OF ACTION**
**Violation of Americans With Disabilities Act**
**42 U.S.C. § 12101 *et seq.* / NRS § 613.330**

61. Plaintiff repeats and reasserts the allegations contained in the preceding paragraphs as if fully incorporated herein.

62. At all times relevant, Plaintiff was a qualified individual under the ADA in that Plaintiff was an individual with a disability who has a physical impairment that substantially limits one or more major life activities, has a record of such impairment, and/or was a person who was regarded and/or perceived as having an impairment or disability.

63. Plaintiff suffered from a serious medical condition.

64. Plaintiff's medical condition was real and/or perceived by the Defendants.

65. Plaintiff sought medical treatment and continued to receive medical treatment.

66. At all times relevant, Plaintiff informed Defendants of her medical conditions and/or Plaintiff's medical status.

67. At all times relevant, Defendants were aware of Plaintiff's medical condition.

68. Plaintiff requested reasonable accommodation to work with her disability.

69. Defendants did not provide reasonable accommodation.

70. Plaintiff, with or without reasonable accommodation, could perform the essential functions of her job.

71. Plaintiff was discriminated against based upon her actual disability and/or her perceived disability by Defendants in violation of the ADA.

72. Further, Defendants discriminated against Plaintiff on the basis of her disability by failing to provide Plaintiff a reasonable accommodation and by failing to engage in the interactive process in good faith.

73. Although Defendants could have reasonably accommodated Plaintiff's disability, Defendants failed to engage in the interactive process in violation of the ADA.

74. Plaintiff opposed such discriminatory conduct as described herein.

75. The acts and/or omissions of Defendants andtheir agents complained of herein are in violation of the Americans with Disabilities Act in that Defendants discriminated and harassed Plaintiff on the basis of her impairment, failed to offer Plaintiff reasonable accommodation, failed to engage in the interactive process with Plaintiff, and/or discriminated against Plaintiff. Thus, and at all times relevant, Plaintiff was discriminated against in violation of the Americans with the Disabilities Act.

76. The acts and/or omissions of the defendants and their agents complained of herein are in violation of the Americans with Disabilities Act in that Defendants

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

harassed and discriminated against Plaintiff on the basis of having an actual and/or perceived disability.

77. The acts and/or omissions of Defendants and their agents complained of herein are also in violation of NRS § 613.330 *et seq.*

78. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has sustained damages in excess of Fifteen Thousand Dollars ($15,000.00).

79. As a result of Defendants' conduct, as set forth herein, Plaintiff has been required to retain the services of an attorney and, as a direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys' fees and costs.

80. Defendants have acted willfully and maliciously, and with oppression, fraud, or malice, and as a result of Defendants' wrongful conduct, Plaintiff is entitled to an award of exemplary or punitive damages.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

**SECOND CAUSE OF ACTION**
**Sex Discrimination / Harassment / Violation of the Pregnancy Discrimination Act / Violation of the Nevada Pregnant Worker's Fairness Act**
**42 U.S.C. §2000e *et seq.* / NRS §613.330 / NRS § 613.4353 *et seq*.**

81. Plaintiff repeats and reasserts the allegations contained in the preceding paragraphs as if fully incorporated herein.

82. Plaintiff is a female and therefore a member of a protected class

83. As more fully set forth above, Defendants treated Plaintiff unfavorably based on her sex.

84. Those of other sexes were treated more favorably.

85. The Pregnancy Discrimination Act ("PDA") was passed in 1978. The PDA amended Title VII of the Civil Rights Act of 1964 to prohibit discrimination on the "basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

86. The Nevada Pregnant Workers' Fairness Act ("PWFA") was passed in 2017 and prohibits an employer from taking "an adverse employment action against a female employee because the employee requests or uses a reasonable

accommodation for a condition of the employee relating to pregnancy, childbirth or a related medical condition . . .” NRS § 613.438(1)(b).

87. At all times relevant, Plaintiff was a qualified individual under the Pregnancy Discrimination Act (“PDA”), NRS § 613.310 *et seq*. and the Nevada Pregnant Workers’ Fairness Act (“PWFA”) in that she is a woman, was actually pregnant, and notified Defendants of her pregnancy.

88. As more fully set forth above, Plaintiff was subjected to unwelcome sexual discrimination and/or harassment.

89. At all times relevant, Plaintiff was performing her job in a satisfactory manner.

90. Defendants, through the actions and conduct of their agents, subjected Plaintiff to adverse employment actions.

91. Plaintiff was discriminated against and/or harassed on the basis of her sex.

92. This conduct based on sex was sufficiently severe or pervasive as to alter the compensation, terms, conditions and/or privileges of Plaintiff’s employment

93. As a direct and proximate result of Defendants’ discrimination, Plaintiff has been damaged in an amount in excess of fifteen thousand dollars ($15,000.00).

94. As a result of Defendants’ conduct, as set forth herein, Plaintiff has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys’ fees and costs.

95. Defendants have acted willfully and maliciously, and with oppression, fraud, or malice, and as a result of Defendants’ wrongful conduct, Plaintiff is entitled to an award of exemplary damages.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

**THIRD CAUSE OF ACTION**
**Retaliation**
**42 U.S.C. § 12203 / 42 U.S.C. §2000e *et seq.* / NRS § 613.340**

96. Plaintiff repeats and reasserts the allegations contained in the preceding paragraphs as if fully incorporated herein.

97. As set forth more fully above, Defendants retaliated against Plaintiff after she requested accommodation, in good faith, as detailed in her Charge of Discrimination and discussions with agents of Defendants.

98. There exists a temporal proximity in relation to Plaintiff's request for accommodation and Defendants' resulting harassment and/or termination of Plaintiff.

99. Defendants retaliated against Plaintiff when she engaged in protected activity by terminating her.

100. Further, Defendants retaliated against Plaintiff for her disability and/or her pregnancy.

101. Plaintiff requested accommodation for her disability which Defendants unreasonably denied.

102. Rather than granting Plaintiff reasonable accommodation for her disability, Defendants retaliated against Plaintiff by, but not limited to, terminating her.

103. This retaliatory action was in response to Plaintiff's request for reasonable accommodation.

104. By taking these adverse actions because Plaintiff engaged in protected activity, Defendants have engaged in a discriminatory practice with malice and/or with reckless disregard to Plaintiff's protected rights. As a result, Plaintiff has been damaged.

105. As a direct and proximate result of the conduct of Defendants described hereinabove, Plaintiff has sustained damages in excess of Fifteen Thousand Dollars ($15,000.00).

106. As a result of Defendants' conduct, as set forth herein, Plaintiff has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys' fees and costs.

107. Defendants have acted willfully and maliciously, and with oppression, fraud, or malice, and as a result of Defendants' wrongful conduct, Plaintiff is entitled to an award of exemplary or punitive damages.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

1. For general damages in excess of $15,000.00;
2. For special damages;
3. For consequential damages;
4. For punitive damages;
5. For liquidated damages;
6. For equitable relief;
7. For injunctive relief;
8. For reasonable attorneys' fees and costs incurred in filing this action; and,
9. Such other and further relief as the Court may deem just and proper.

DATED this 16th day of July 2026.

GABROY | MESSER

By *_/s/ Christian Gabroy_*
Christian Gabroy
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson Nevada 89012
Tel: (702) 259-7777
Fax: (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com
*Attorneys for Plaintiff*

# EXHIBIT I

DocuSign Envelope ID: E5B76E11-E3D9-4997-9678-DDC77558EEC0

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| EEOC | **34B-2022-00967** |
| FEPA | |

**Nevada Equal Rights Commission** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev. etc.)* | Home Phone | Year of Birth |
|---|---|---|
| Nayirah Dunlap | [redacted] | [redacted] |

Street Address

[redacted]

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| First Key Homes | 101 - 200 Employees | (404) 548-7047 |

Street Address

8275 S. Eastern Ave.

Las Vegas, NV 89123

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Disability, Sex | 05/01/2021 | 05/05/2022 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

The Respondent discriminated against me due to my sex, female (pregnancy) and disability. I was subjected to disparate terms and conditions of employment (forced to take unnecessary leave). I was later not accommodated and subjected to discriminatory discharge. I filed my Intake Inquiry Form with the intent to file a Charge of Discrimination against the Respondent with the Nevada Equal Rights Commission on May 18, 2022. I began working for the Respondent in April 2021 as a Property Administrator. I performed my job satisfactorily. I found out I was pregnant in May 2021. I notified Respondent shortly thereafter. In October 2021, I put in an application for leave under the FMLA but was ultimately told that I did not qualify for it. Unbeknownst to me; however, when one applies for FMLA a short-term disability (STD) application is submitted, as well. Eventually, I received a notice saying I was not qualified for FMLA but that my STD was being approved for January 4, 2021 (but back dated to December 20, 2021). However, I discussed with HR the fact that I wanted to continue to work during my pregnancy since we were working remotely, anyway, and I wanted to bank my hours. The Respondent had a parental leave program that was going to go into effect in January 2022 and I wanted to save my hours for that. This was approved by HR. I had my baby on December 19, 2021. I continued to work during this time and thought everything ok. However, on December 27, 2021, I received a text from my manager, Stephanie Stanley, something to the effect of: just a heads up you should not

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

10/25/2022 | 9:15 AM PDT

DocuSigned by: Nayirah Dunlap

E38CBC1894424B4...

*Date* *Charging Party Signature*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | **34B-2022-00967** |
| **Nevada Equal Rights Commission**<br>*State or local Agency, if any* | | and EEOC |

be clocking in for work. Please enjoy time with your baby... I immediately called her and discussed the fact that I had been working. Ultimately, I was told that I could not clock in anymore as I was supposed to be on leave and my IT access was then restricted. I was essentially forced to take leave at this time that I did not want.Later, around late January 2022 early February 2022, I began to experience medical complications from my delivery and did actually require time off. I continually sent in medical documents to the third-party administrator of the STD. My doctor indicated that I required approximately 6 12 weeks off at that time. I later required another 6 8 weeks. In March 2022, I was told that the temp employee who had been working my position had been promoted and now there was another temp working my job. I believe the Respondent already knew at this time that it wanted to replace me. I received a call on May 5, 2022, from HR asking about my return to work that she claimed was supposed to be on April 23, 2022. I explained to her that my leave had to get extended. She called me back a bit later and advised me that I was over the time limit for FMLA. I found it odd that I had to explain to her that I had been denied for FMLA and was actually on STD. She then said her computer was freezing and she had to end the call. She called me back shortly thereafter and advised me that I was being terminated because there was no certainty on my return. I feel the Respondent did not do its due diligence under the ADA and simply chose to terminate me. The Respondent later tried to claim that I resigned, but this is false. I believe I was subjected to this adverse treatment on the basis of sex (female/pregnancy), and disability. I believe the Respondents actions violated Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act Amendments Act (ADAAA), and Nevada State Law.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>10/25/2022 \| 9:15 AM PDT    DocuSigned by: Nayirah Dunlap E38CBC1894424B4...<br>*Date*    *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

# EXHIBIT II

COMMISSIONERS
Andre Martin, Chair
Tiffany Young, Secretary
Hanadi Nadeem
Stewart Chang
Donald Bordelove

NERC
NEVADA EQUAL RIGHTS COMMISSION
A division of the Department of Employment, Training and Rehabilitation

JOE LOMBARDO
Governor

CHRIS SEWELL
DETR Director

PATRICE D. PEREZ
Administrator

**February 3, 2026**

**Case Name:**
Nayirah Dunlap
v.
FirstKey Homes

**Charge No.: 1025-22-0318L**

**Charging Party**
Nayirah Dunlap
[redacted]

**Respondent**
FirstKey Homes
Atten: Louis Bubala
8275 S. Eastern Ave.
Las Vegas, NV 89123

**DETERMINATION**

The above-referenced charge of discrimination was filed by Charging Party, Nayirah Dunlap, alleging discrimination based on sex (female/pregnancy) and/or disability, against Respondent, FirstKey Homes. Dunlap alleged the following: that she was subjected to disparate terms and conditions of employment; that she was not accommodated; and that she was subjected to discriminatory discharge.

More specifically, Dunlap alleged that, in October 2021, she put in an application for leave under the FMLA related to her pregnancy. She claimed that she eventually received a notice saying that she was not qualified for FMLA but that her short-term disability (STD) was being approved for January 4, 2021 (retroactive to December 20, 2021). Dunlap had her baby on December 19, 2021.

Around late January 2022 -early February 2022, Dunlap claimed that she began to experience medical complications related to her delivery and required more time off. Initially, she claimed that her doctor had indicated that approximately 6 – 12 weeks of leave was required; however, she later required another 6 – 8 weeks. Dunlap claimed that she continually submitted medical documents to the Respondent's third-party administrator (TPA) of the STD.

According to Dunlap, in March 2022, she was told that the temp employee who had been working in her position had been promoted and there was another temp working her job. Dunlap believed that this reflected the Respondent's intent to replace her.

Dunlap claimed that she received a call on May 5, 2022, from HR asking about her return to work (that HR claimed was supposed to have occurred on April 23, 2022). According to Dunlap, she explained to HR that her leave had been extended. Dunlap alleged that, ultimately, HR advised her that day that she was being terminated because there was "no certainty" on her return to work.

In response, Respondent denied all allegations of discrimination and/or failure to accommodate a disability and/or pregnancy. Respondent claimed that it utilized a TPA to assess all FMLA requests like Dunlap had filed in October 2021. The TPA concluded that Dunlap was not eligible for FMLA leave at that time. After being informed she did not meet eligibility for FMLA leave, Respondent claimed that Dunlap then filed for short term disability. A TPA was also used by Respondent to assess short-term disability claims. The determination was that Dunlap *did* qualify for short-term disability leave, and it was approved through April 23, 2022. Respondent indicated that it was expected that Dunlap would return to work at that time. However, Respondent claimed that the paperwork later submitted by Dunlap did not indicate any "immediate expectation" of a return to work or physical approval to return to work. Ultimately, Respondent made the decision to terminate Dunlap on May 5, 2022, due to "ongoing uncertainty regarding any potential return to work." Respondent contended that employers are not required to provide indefinite leave or leave of unlimited duration.

While NERC concedes that employers are not required to provide indefinite leave, NERC found the Respondent's overall position unpersuasive. NERC found that the available evidence generally comported with Dunlap's version of events and that Respondent failed to fulfill its due diligence under the ADAAA and/or NV State law.

More specifically, NERC's investigation yielded the following timeline of events: Dunlap began working for Respondent in April 2021. In May 2021, she found out she was pregnant and notified Respondent shortly thereafter. Dunlap initially applied for FMLA leave but was not qualified for that type of leave as she had not met the requirements. She was, however, eventually approved for short term disability (STD) with a retroactive date of December 20, 2021. Dunlap delivered her baby on December 19, 2021.

Around March 7, 2022, Dunlap's doctor completed a note indicating that she had been under a doctor's care since December 17, 2021, and that she was unable to work "from 3/7/22 through pending..." The return date was listed as "to be determined." Also noted was that Dunlap required further medical workups and had a procedure pending.

In April 2022, Dunlap was granted an extension of her disability benefits through April 22, 2022.

It appeared that around May 3, 2022, Dunlap's doctor submitted a "restrictions" form to Lincoln Financial indicating that Dunlap needed to be "sedentary" and that her next office visit was scheduled for May 16, 2022.

A couple of days later, on May 5, 2022, Dunlap and Respondent's HR had contact. While NERC could not determine exactly what transpired during this contact, ultimately, Dunlap was sent a letter dated this date which read: "*Based on the information you have provided you have no immediate expectation or approvals from your treating physicians to return to active working. Our information indicates that your expected return to work date was 4/23/2022. At this point, you have exhausted any leave entitlement that you may have been eligible for under the FMLA. You have also exhausted all time off or leave of absence time available under Company policy or practice. As such, due to the ongoing uncertainty regarding any potential return to work, we regret to inform you that the Company will no longer be able to hold open a position for you and that your employment with the Company is considered terminated as of the date of this letter…*"

NERC finds that there is sufficient evidence for Dunlap to be determined a qualified person under the ADAAA and/or NV State law. Notably, she was on medical leave for after childbirth complications for multiple months and the last medical paperwork submitted by her medical provider indicates she was being limited to "sedentary" until at least her next scheduled appointment on May 16, 2022. Evidence further supports that Respondent was aware, or should have been aware, that Dunlap was a disabled person who needed disability accommodation in the form of additional leave. The question of whether Respondent's TPA in charge of leave requests properly communicated this information and provided copies of those documents to Respondent's HR personnel is irrelevant as Respondent is considered on notice for any documents and information received by the third-party it designates to perform these functions.

While Respondent would likely point to its granting of Dunlap's short-term disability leave as evidence that it properly engaged in an interactive process, that argument would confuse the appreciable timeline of events. Specifically, while Respondent *did* grant the initial leave and ostensibly engage in interactive process for that, there is no evidence that it necessarily engaged with Dunlap regarding the additional accommodation that she remain "sedentary" until at least May 16, 2022, after the end of the original leave on April 22, 2022.

Respondent may also claim that it was unaware of this request for additional accommodation or the paperwork in which the request was made, however, again, any failure of

Respondent's third-party service, that Respondent itself designated to manage employee leave matters, to provide that information and documents does not absolve Respondent of its responsibilities under the ADA and/or NV Law and Respondent is presumed to be on notice.

NERC acknowledges that the supplemental paperwork from Dunlap's medical provider is unclear as to what exactly the scope and timeline of the requested accommodations were in that it noted that she was to be "sedentary" until at least May 16, 2022, and it did not include a definite return to work date. However, NERC takes the position it was the responsibility of Respondent to seek clarification and engage with Dunlap and/or her medical provider about those unclear details as part of the interactive process.

Since Respondent did not engage in an interactive process with Dunlap regarding the additional accommodation requests, there is no reasonable way of determining if Respondent could have made the accommodations absent undue hardship. However, given that the record supports that Respondent had a temporary worker in place for her position and that Dunlap had been working remotely prior, it seems highly unlikely it could meet that burden in any event.

While NERC concedes that if Dunlap and/or her medical provider had failed to provide some semblance of a timeline for a return to work (and if leave had been the *only* available option, which NERC finds doubtful) after a legitimate interactive process with Respondent, there may have been a different conclusion to this analysis. That did not happen.

As evidence supports that Respondent failed to fulfill its due diligence under the ADAAA and NV State Law, there is a Probable Cause finding for failure to accommodate based on disability and/or sex resulting in discriminatory discharge.

NRS 233.170(2) requires that if the Commission determines that there is reason to believe that violations have occurred, it shall endeavor to eliminate unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites the parties to join with it in a collective effort toward a just resolution of this matter on **Tuesday 2/24/2026 at 9am PST via Zoom.** In the event the parties refuse to participate in conciliation or conciliation efforts fail, the Commission shall close the charge and forward to the Equal Employment Opportunity Commission ("EEOC") for determination as to whether the EEOC will prosecute the matter and/or for the issuance of a Right to Sue Letter.

On Behalf of the Commission,

Patrice D. Perez, Administrator

# EXHIBIT III

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

**NOTICE OF RIGHT TO SUE (CONCILIATION FAILURE)**
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/21/2026

**To:** Nayirah Dunlap
[redacted]

Charge No: 34B-2022-00967

EEOC Representative and email: KARRIE MAEDA
STATE, LOCAL, & TRIBAL PROGRAM MANAGER
KARRIE.MAEDA@EEOC.GOV

---

**NOTICE OF RIGHT TO SUE (CONCILIATION FAILURE)**

To the person aggrieved: This notice concludes the EEOC s processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

**NOTICE OF YOUR RIGHT TO SUE**

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed *WITHIN 90 DAYS* of your receipt of EEOC's official notice of dismissal.** *You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)*

*If you file suit, based on this charge, please send a copy of your court complaint to this office.*

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
04/21/2026
Christine Park-Gonzalez
District Director